**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**PATRICK WALKER**                                                                                    **PLAINTIFF**

V.                                         **CASE NO. 5:23-CV-5126**

**WASHINGTON REGIONAL MEDICAL CENTER**                           **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Washington Regional Medical Center's ("WRMC") Motion for Summary Judgment (Doc. 38). Plaintiff Patrick Walker filed a Response in Opposition (Doc. 43), and WRMC filed a Reply (Doc. 44). In January of 2021, a then-52-year-old Walker started working at WRMC as the Director of Central Billing Office. In November of 2022, he resigned from that position under threat of termination. After his resignation, he brought this suit against WRMC under the Age Discrimination in Employment Act. For the reasons below, WRMC's Motion for Summary Judgment is **GRANTED**.

**I. BACKGROUND**

In January of 2021, Walker was hired by Ashley Moser (his direct supervisor) and Dan Eckels (his ultimate supervisor) to the position of Director of Central Billing Office. Twenty-two months later, Moser and Eckels forced the then-54-year-old Walker to resign from the same position. The Director of Central Billing Office was tasked with "oversee[ing] the leadership and operations of the centralized business office department" and the description of job duties included:

> promoting employee engagement to achieve a positive workforce; ensuring the activities of the billing operations are conducted in a manner consistent with WRMC policy and the law; overseeing operations of the central billing department, including claims submissions, management of accounts

1

  receivable, and denials or underpayments of claims; serving as the subject matter expert and primary resource for all hospital and professional billing processes; and tracking and communicating performance data to leadership.

(Docs. 39, ¶¶ 4 & 5; 40-6).

When Walker started in the position, he claims that his job duties were not as advertised. "[H]e worked entirely in the back end of the revenue cycle, and thus did not handle compliance or patient safety, prepare budgets, submit claims, supervise employees who submitted claims, or ensure claims were accurate and complete." (Doc. 41, ¶ 5). However, his performance evaluation about a year into his tenure included the same the written job description; it had not changed to reflect Walker's professed on-the-ground reality. (Doc. 41-4, pp. 2–3). During his employment, Walker struggled with implementing the new records and billing system that WRMC had transitioned to before he was hired. (Doc. 41-1, 20:4–21:16). He claims that he was never disciplined, (Doc. 41-1, 23:24–24:20), but his annual performance evaluation reflects a mix of positive and negative feedback, *see* Doc. 41-4, pp. 4–7 (describing Walker as "dedicated" but cautioning against "alienating the persons on the receiving end of the communication"; noting "a challenging year within our Business Office metrics" in which Walker "had some positive gains"; and rating Walker 3/5 on two metrics, 4/5 on two metrics, and 5/5 on one metric). He also failed to controvert Moser's and Eckels's criticisms of his performance, instead attributing issues with the Business Office to causes outside his control. *See* Local Rule 56.1(c) ("All material facts set forth in the statement [of fact] filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."); Doc. 41, ¶¶ 10–14, 22–24.

In April of 2022, WRMC hired an outside consultant, Huron Consulting Group, to evaluate the business office. Moser and Eckels claim Huron advised them that Walker was "not performing successfully in his position" and "would not be capable of accomplishing the hospital's objectives for his position." (Doc. 39, ¶ 19). However, no reports, contemporaneous writings, or statements from anyone at Huron appear in the record, although its investigation is discussed by Moser and Eckels in their declarations and by Walker in his deposition. *See* Docs. 40-4, ¶¶ 17–19; 40-5, ¶¶ 13–15; 41-1, 28:17–30:22.

In November of 2022, shortly before Walker's separation, a patient wrote a letter complaining about a significant billing error. (Doc. 42-1). Walker was instructed to address the issue and write a letter apologizing to the patient. (Doc. 41, ¶¶ 22–23). Walker wrote the letter as instructed but, by his own admission, passed the issue along to another WRMC employee to address, believing that the error was her responsibility, not his. (Doc. 41, ¶ 24). According to Eckels, when Walker "failed to adequately [address the issue] he was given the option to resign or be terminated." (Doc. 40-4, ¶ 22). According to Walker, "Eckels told Plaintiff they were going in another direction." *Id.* ¶ 25; Doc. 41-1, 34:3–5. Walker does not allege that any comments about his age were made during his employment or as justification for his threatened termination. (Doc. 41, ¶ 30).

Instead, Walker filed this suit after, he alleges, his caseworker at the Arkansas Division of Workforce Services told him that WRMC discharged other employees over age 50. (Doc. 40-1, 39:20–40:3). His caseworker, Katherine Williams, denies making that statement or even having access to information that would allow her to make that

3

statement. (Doc. 40-2, 15:17–16:14). There is no other evidence in the record connecting Walker's age to his termination.

After Walker resigned, WRMC restructured its Central Billing Office and hired Thomas Merritt, age 52, as the Executive Director of Central Billing Office. (Doc. 41, ¶¶ 27–29). A couple of months prior to Walker's resignation, Moser announced she was leaving her position. (Doc. 42-2). Walker alleges that Merritt was hired to replace Moser, not Walker. (Doc. 41, ¶ 30). Walker further alleges that he has "identified a younger similarly situated comparator, Rebecca McDade, WRMC's Director of Revenue Integrity." *Id.* He does not allege that his job duties were transferred to McDade, only that she was "at or younger than 40 years old," was allowed to remain in her position, and handled some of the job duties included in Walker's written job description that he denied actual responsibility for. (Docs. 41, ¶ 27; 41-2, p. 7).

## II.  LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The Court must review the facts in the light most favorable to the nonmoving party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). If the moving party meets its burden, "the nonmoving party must then come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

"To be material, a fact must 'affect the outcome of the suit under the governing law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient' to survive summary judgment." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Liberty Lobby*, 477 U.S. at 252). The nonmoving party must instead produce sufficient evidence "such that a reasonable jury could return a verdict" in their favor. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248 (1986)).

"An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citation omitted). Without direct evidence of age discrimination,[1] Walker can establish a prima facie case by demonstrating that: (1) he is over 40 years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment action; and (4) he was replaced by someone sufficiently younger to permit an inference of age discrimination. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). "In reduction in force (RIF) cases where the plaintiff's duties are either eliminated or redistributed to remaining workers, the fourth element is satisfied by showing that age was a factor in the termination." *Id.* An employee has the burden to establish that age was the "but for" cause of the adverse employment

---

[1] WRMC argues that Walker has no direct evidence of age discrimination, and Walker does not disagree with, or even address, this argument in his Response.

action. *Gross v. FBL Financial Services*, Inc., 557 U.S. 165, 176-78 (2009). The employee retains this burden of persuasion throughout the *McDonnell Douglas* burden-shifting framework. *Id*. at p. 180.

### III.  DISCUSSION

There is no dispute that Walker is over 40 or that he suffered an adverse employment action. Instead, WRMC argues that Walker failed to make out a prima facie case because the evidence shows that he did not meet applicable job qualifications and he has failed to produce any evidence permitting an inference that age was a factor in his separation.

#### a.  Walker's Performance and WRMC's Legitimate Expectations

In his Response, Walker does not argue that he met the applicable job qualifications, but instead argues that WRMC's performance-based reasons for his termination were pretextual. (Doc. 43, pp. 3–6). Nonetheless, the Court will examine his pretext argument where relevant to counter WRMC's argument that Walker did not meet its legitimate expectations.

To satisfy this element of his prima facie case, Walker must demonstrate that he "was actually performing h[is] job at a level that met h[is] employer's legitimate expectations." *Whitley v. Peer Rev. Sys., Inc.*, 221 F.3d 1053, 1055 (8th Cir. 2000), *abrogated on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011). Past performance evaluations may not "in themselves establish that [an employee] was meeting [their employer]'s legitimate employment expectations at the time" of the adverse employment action when those evaluations are dated. *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 920–21 (8th Cir. 2000) (citing *Miller v. Citizens Sec. Group, Inc.*,

6

116 F.3d 343, 346 (8th Cir.1997)). Here, the singular performance evaluation during Walker's tenure occurred eleven months after he started and eleven months before his termination.

Moreover, the parts[2] of this evaluation that Walker is using to support his professed adequate performance show that, even eleven months before his termination, Walker was struggling with effective communication. Moser noted that Walker should "[w]ork on reducing risk of alienating the persons on the receiving end of the communication." (Doc. 41-4, p. 4). This feedback is in line with Moser's and Eckels's statements that Walker "did not interact well with his colleagues" and therefore required repeated counseling "on his leadership style" and "temperament." (Docs. 40-4, ¶¶ 20–21; 40-5, ¶ 12). "[A]n employer may legitimately place equal or greater importance on leadership and people skills [than relevant subject-matter skills]." *Ziegler v. Beverly Enterprises-Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir. 1998).

With respect to Moser's and Eckels's other statements regarding Walker's poor performance, *i.e.*, his overarching failure to take responsibility for "overall billing operations," *see* Docs. 40-4, ¶¶ 10–14; 40-5, ¶¶ 8–12, Walker presents no evidence apart from his eleven-month-old performance evaluation to controvert their assertions and, more tellingly, fails to contradict them in his Response to WRMC's Statement of Facts. *See* Doc. 41, ¶¶ 10–11, 13–14. Instead, he points to the lack of contemporaneous documentary evidence of poor performance, his own deposition testimony that he "couldn't recall any discussion about performance issue or deficiencies during his

---

[2] The copy of Walker's 2021 evaluation that is in the record was submitted by Walker's counsel and appears to have pages missing. WRMC did not include a copy of the evaluation in its summary judgment exhibits.

employment," and circumstances or personnel that were more responsible for Billing Office failures than he was. (Doc. 41, pp. 3–6). This final argument for the adequacy of his performance does not rebut Moser's and Eckels's contentions that Walker failed to take ownership of Billing Office operations—it reinforces them.

WRMC's "final straw" demonstrates this point. The parties agree that in November, shortly before he was fired, Walker was instructed to deal with a patient complaint and write a letter of apology. Walker argues that the complaint was not his fault or his responsibility, although he does not dispute that he was instructed to deal with it:

> Again, while Defendant attempts to ascribe the reason for this complaint to Plaintiff, a review of the complaint itself and emails surrounding the complaint show that the issue originated because hospital staff failed to add the patient's supplemental insurance during registration for his visits, which Plaintiff explained in his letter to the patient. This error fell under the front-end revenue cycle, which was overseen not by Plaintiff but by another employee, Shelley Burch, and Plaintiff forwarded this issue to her to address.

*Id.* at 5–6. Here, too, Walker, by his own admission, demonstrates the "insubordination," "failure to follow through with assigned tasks," and "inadequate[ ] follow up and response[ ] to patient complaints" that his supervisors complained of by shifting blame and responsibility elsewhere. (Doc. 40-4, ¶ 14). No reasonable jury could infer from Walker's own deposition testimony that he was meeting WRMC's expectation that he take responsibility for Billing Office operations generally.

To the extent that WRMC relies on the Huron investigation to argue that Walker was not meeting expectations, the Court does not consider those arguments because the only record evidence about the outcome of the investigation are Moser's and Eckels's second-hand statements. However, Walker admits that Huron was brought in to deal with issues in the Billing Office, which lends further support to WRMC's claim that the Billing

Office was experiencing issues under Walker's leadership. (Doc. 40-1, 28:17–30:19). In total, none of Walker's evidence creates a genuine issue of material fact as to whether he was meeting WRMC's legitimate expectations at the time he was separated. His statement that he does not recall being disciplined while at the same time acknowledging the failures of his department and shifting blame for them to others does not permit an inference that he was meeting WRMC's expectations. *See Miller v. Citizens Sec. Grp., Inc.*, 116 F.3d 343, 346 (8th Cir. 1997). And his "attempt to justify his failure [to meet the employer's requirements] does not create a genuine issue as to the legitimacy of the requirement." *Riley v. Lance, Inc.*, 518 F.3d 996, 1002 (8th Cir.2008); *cf. Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) ("[The plaintiff]'s justifications for his failure to meet [his employer]'s expectations are not evidence that creates a genuine issue of fact as to whether [his employer]'s reasons were mere pretext.").

### b. Evidence Supporting an Inference of Discrimination

Even if the Court were to disregard Moser's and Eckels's statements and Walker's admissions and conclude that Walker was meeting WRMC's legitimate expectations, he has nevertheless failed to present evidence that supports a finding in his favor on the fourth element, regardless of how the Court defines that element.[3] The Eighth Circuit has "noted it is unlikely a supervisor would hire an older employee and then discriminate on the basis of age, and such evidence creates a presumption against discrimination." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 470 (8th Cir. 2011) (quoting *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 877 (8th Cir.2008)). Here, Walker was hired by the same supervisors at 52

---

[3] Because Walker's claim fails under either construction of the fourth element, there is no *material* fact issue of whether Merritt was Walker's replacement or whether his duties were instead redistributed between Merritt and others.

9

that fired him at 54, so there is "a presumption against any age discrimination in this case," and Walker has "failed to rebut with any evidence permitting a reasonable inference of discriminatory animus." *Id.*

WRMC argues that the typical fourth element—replacement by someone sufficiently younger to permit an inference of age discrimination—should apply. Under that standard, Walker has failed to make out this element because his replacement, Thomas Merritt, was 52, just two years younger than Walker, which is not sufficiently younger to support an inference of age discrimination. *Lewis v. St. Cloud State Univ.*, 467 F.3d 1133, 1136 (8th Cir. 2006) ("[A] five-year age difference is insufficient to establish a *prima facie* case . . . ." (citing *Schiltz v. Burlington Northern R.R.,* 115 F.3d 1407, 1413 (8th Cir.1997))).

In response, Walker argues that Merritt was not his replacement, but instead replaced Moser. Therefore, Walker argues that the reduction-in-force fourth element—some showing that age was a factor in the termination—should apply. Walker points to his younger coworker, Rebecca McDade, and argues that a reasonable jury could infer age was a factor in Walker's termination because "McDade was younger than Plaintiff and was not terminated when Plaintiff was, showing she was more favorably treated as she retained her employment while Plaintiff was forced to resign or face termination." (Doc. 43, p. 8). Walker asserts that McDade was similarly situated because she had a "similar title and the same supervisor" and "performed job duties included in the written description of Plaintiff's position." *Id.*

Even assuming that the reduction-in-force standard applies, Walker has submitted no evidence related to McDade's performance, positive or negative, so the Court cannot

find that she is similarly situated to Walker. *See Wilcox v. State Farm Mut. Auto. Ins. Co.*, 253 F.3d 1069, 1071 (8th Cir. 2001) (finding terminated employee and younger employee in same position not similarly situated where the terminated employee had "performance difficulties" that the younger employee did not have); *Miller v. Citizens Sec. Grp., Inc.*, 116 F.3d 343, 347–48 (8th Cir. 1997) (finding that "no reasonable fact finder could draw an inference of discrimination" where the plaintiff's only proof of similar performance was the affidavit of someone who "reviewed a small fraction" of the employer's files to evaluate the plaintiff's and the younger comparator's performance). Thus, there is no basis for a jury to infer that age was a but-for reason that explains why Walker was terminated while McDade was not.

## IV.  CONCLUSION

Because Walker has failed to present direct evidence or make out a prima facie case of discrimination, his ADEA claim cannot survive summary judgment. On this record, taken as a whole, no reasonable jury could infer that age was a reason for Walker's separation from WRMC. Therefore, **IT IS HEREBY ORDERED** that WRMC's Motion for Summary Judgment (Doc. 38) is **GRANTED**. Judgment will enter contemporaneously with this Opinion, and the case is **DISMISSED**.

**IT IS SO ORDERED** on this 10th day of January, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE